**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| LATEX CONSTRUCTION CO., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:12-CV-0892-RWS |
| EVEREST NATIONAL | : | |
| INSURANCE CO., | : | |
| | : | |
| Defendant. | : | |

## **ORDER**

This case comes before the Court on Defendant Everest National Insurance Company's ("Everest") Motion to Dismiss [14]. After reviewing the record, the Court enters the following Order.

## **Background**

Everest issued Latex Construction Company ("Latex") a Commercial Excess Liability Policy ("Everest Policy") for the period January 1, 2007 to January 1, 2008.[1] The Everest Policy contains $10,000,000 Each Occurrence Limits of Insurance and $10,000,000 Annual Aggregate Limits of Insurance.

---

[1] At this stage, all facts are from Latex's Complaint [1] and are taken as true.

The Everest Policy provides: "We will pay on behalf of any insured those sums in excess of 'underlying insurance' or 'other insurance' that any insured becomes legally obligated to pay as damages to which this insurance applies." The Everest Policy incorporates the "definitions, terms, conditions, limitations, exclusions and warranties" of the underlying insurance.

The underlying insurance was provided by Zurich American Insurance Company ("Zurich Policy"). The Zurich Policy contains a $1,000,000 Each Occurrence Limit of Insurance and covers "sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage'" to which the policy applies. Additionally, under the Zurich Policy, Zurich has "the right and duty to defend any 'suit' seeking those damages."

The Everest Policy includes a "duty to defend" provision as well. The policy provides: "We have the right and duty to defend any 'suit' against any insured seeking damages to which this insurance applies when the 'underlying insurance' or 'other insurance': (a) Do not apply; or (b) Cease to apply because of exhaustion of their limits of insurance solely by the payment of claims, settlements, judgments or 'defense expenses' for an 'occurrence' to which this insurance also applies."

2

Latex entered into an agreement with Panhandle Eastern Pipe Line Company ("Panhandle") to provide labor and equipment for construction of a 31-mile natural gas pipeline ("Panhandle Contract"). Latex assembled, welded, and buried pipe for the project. Panhandle provided overall project management, the pipe, and the welding procedures and specifications. Panhandle subcontracted with Acuren Inspection Inc. ("Acuren") to perform radiographic inspection of welds to ensure they met requisite standards. Latex welded the pipe, Acuren x-rayed the welds and approved them, and then Latex buried completed sections of the pipeline.

On October 23 and 26, 2007, a section of the pipeline buried by Latex failed two hydrostatic tests. Panhandle decided to reevaluate all of the prior x-rays on the project and directed Latex to dig up segments of the pipeline and re-weld portions of the pipe. Panhandle paid Latex for the excavation and re-welding and for its continued work on uncompleted portions of the pipeline, but refused to pay $14.8 million for labor and equipment Latex had provided for the project.

Panhandle filed its Original Petition in the District Court of Harris County, Texas, 269th Judicial District, on April 3, 2008. Latex and Acuren, among others, were named defendants. The causes of action identified in the

3

Original Petition were breach of contract, breach of warranties, and attorney's fees.  However, in the Original Petition, Panhandle alleged that Latex negligently or improperly welded and buried the pipe, which caused physical damage to the pipe and resulted in loss of use of the pipeline, and that Latex failed to provide services in a good and workmanlike manner and in accordance with industry standards.  During litigation, Panhandle claimed that Latex negligently failed to heat the pipe in a manner that eliminated hydrogen from the weld, which allegedly caused cracks in the pipe.  According to Panhandle, Latex's negligence delayed completion of the project by four months and caused $36.8 million in damages.  Panhandle sought to recover all of its alleged damages against all defendants.  Some defendants asserted tort-based affirmative defenses, including contributory negligence, comparative negligence, and proportionate responsibility.  On May 13, 2011, Panhandle and Latex settled.  Under the settlement, Latex paid Panhandle $8,850,718.

Prior to the settlement, Latex tendered the lawsuit to Zurich and Everest, claiming Panhandle sought damages for property damage covered by the Zurich Policy (and by extension, the Everest Policy).  Zurich agreed to pay Latex's defense costs pursuant to a reservation of rights.  Everest

4

acknowledged Latex's tender of the suit via letter, but did not immediately assert a position regarding coverage under the Everest Policy.

On September 17, 2010, Zurich filed a declaratory judgment action against Latex seeking a declaration that Zurich had no duty to defend or indemnify Latex in the Panhandle suit. Later, Zurich and Latex reached a settlement under which Zurich paid Latex's defense costs until it exhausted its policy's $1,000,000 per-occurrence limit. On May 13, 2011, Latex informed Everest of Panhandle's settlement offer and of Latex's settlement with Zurich. Latex requested that Everest contribute $7,850,718 toward the Panhandle settlement, the amount in excess of the Zurich Policy's $1,000,000 payment. Everest denied coverage for the Panhandle suit that same day.

Latex alleges that Everest's refusal to reimburse Latex for $7,850,718 in settlement costs is a material breach of the Everest Policy. Further, following its settlement with Zurich, Latex incurred defense costs over $125,000. Latex claims that Everest had a duty to defend once the Zurich Policy's limit was exhausted, and Everest's failure to pay defense costs incurred by Latex after the Zurich settlement constitutes another material breach of the Everest Policy. Latex seeks damages for its breach of contract claims and a declaration that

5

Everest had a duty to indemnify and defend Latex after exhaustion of the Zurich Policy.

**Discussion**

I.   Motion to Dismiss - Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this pleading standard does not require "detailed factual allegations," mere labels and conclusions or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In order to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. Id.

"At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273

6

n.1 (11th Cir. 1999). However, the same does not apply to legal conclusions set forth in the complaint. Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (citing Iqbal, 129 S. Ct. at 1949). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Furthermore, the court does not "accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.

II.   Breach of Contract

Latex asserts two breach of contract claims against Everest – one for failure to indemnify and one for failure to defend. The parties do not dispute that Georgia law governs here. In Georgia, the elements for a breach of contract claim are: "(1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." Lubin v. Cincinnati Ins. Co., 2010 WL 5313754, at *5 (N.D. Ga. Dec. 17, 2010) (quoting Kuritzky v. Emory Univ., 669 S.E.2d 179, 181 (Ga. Ct. App. 2008)). Latex maintains that it has adequately stated breach of contract claims under Georgia law. Everest contends that exclusions under the Everest Policy bar coverage and therefore, Latex's claim should be dismissed. The Court agrees with Latex.

7

In Georgia, "the interpretation of an insurance policy, including the determination and resolution of ambiguities, is a question of law for the court to decide." Racetrac Petroleum, Inc. v. Ace Am. Ins. Co., 841 F. Supp. 2d 1286, 1290 (N.D. Ga. 2011) (quoting Giddens v. Equitable Life Assurance Soc'y of the U.S., 445 F.3d 1286, 1297 (11th Cir. 2006)). However, where a plausible claim for relief has been stated, fact-specific issues should not be resolved at the motion to dismiss stage. See FTC v. Citigroup, 239 F. Supp. 2d 1302, 1305 (N.D. Ga. 2001) ("The purpose of a 12(b)(6) motion is to determine whether the plaintiff's complaint adequately states a claim for relief. A motion to dismiss concerns only the complaint's legal sufficiency and is not a procedure for resolving factual questions or for addressing the merits of the case.").

Here, Latex argues that analysis of the Everest Policy's coverage and exclusions requires a more in-depth evaluation of the "true facts" and allegations in the underlying Panhandle lawsuit. (Plaintiff Latex Construction Company's Memorandum of Law in Opposition to Defendant Everest National Insurance Company's Motion to Dismiss ("Pl.'s Resp."), Dkt. [23] at 17-20.) Everest, on the other hand, argues that the Court need only look to the insurance contract and allegations in the underlying complaint to determine these issues. (Everest National Insurance Company's Memorandum in Support of its Motion

8

to Dismiss ("Def.'s MTD Memo."), Dkt. [14-1] at 8.) Again, the Court agrees with Latex.

Under Georgia law, the inquiry regarding coverage and the duty to defend under an insurance contract does not end with the allegations in the underlying complaint. The insured's factual contentions and the "true facts" in the underlying case are also to be considered. See Racetrac Petroleum v. Ace Am. Ins. Co., 841 F. Supp. 2d 1286, 1293 n. 3 (N.D. Ga. 2011) ("What ultimately matters is the truth of the underlying claims, not the allegations in the complaint.") (citations omitted); see also Anderson v. S. Guar. Ins. Co. of Ga., 508 S.E.2d 726, 730 (Ga. Ct. App. 1998) ("When the complaint on its face shows no coverage, but the insured notifies the insurer of factual contentions that would place the claim within the policy coverage[,]... the insurer has an obligation to give due consideration to its insured's factual contentions and to base its decision [as to whether to provide a defense] on 'true facts.'" (quoting Colonial Oil Indus. v. Underwriters Subscribing to Policy No.s TO31504670 & TO31504671, 491 S.E.2d 337, 338-39 (Ga. 1997)). Therefore, as Latex contends, the facts underlying the Panhandle lawsuit are relevant to this dispute.

Latex asserts that the true facts in the Panhandle case – facts that are not set out or developed fully at this stage of these proceedings – bring the suit

9

within coverage and Everest's duty to defend under the insurance contract.[2] As Latex notes, the burden is on Everest to show that the Panhandle claim comes within an exception to coverage. See Loftin v. United States Fire Ins. Co., 127 S.E.2d 53, 58 (Ga. Ct. App. 1962) ("The burden is on the insurer to show that a loss or claim comes within an exception to coverage."). However, in its motion, Everest has not addressed the underlying facts in the Panhandle case or how those facts impact coverage or particular exclusions under the Everest Policy. Thus, construing the facts in Latex's favor, as the Court must do at the motion to dismiss phase, Latex has stated a plausible claim for breach of contract. Therefore, Everest's Motion to Dismiss Latex's breach of contract claims is **DENIED.**

III. Declaratory Judgment

To bring a declaratory judgment action, Latex must show that an "actual

---

[2] For instance, Latex asserts that Panhandle's allegations sounding in tort, as well as the issues and defenses raised during the course of the litigation, remove the suit from the contractual liability exclusion under the Everest Policy. (Pl.'s Resp., Dkt. [23] at 25-27.) Latex also argues that other facts may remove the suit from any "business risk" exclusions under the policy, such as whether damage to the pipe occurred after Latex's work was "complete" or whether Everest made any admissions regarding scope of exclusions or assumed any risks as underwriter of the policy. Id. at 19 n. 5.

10

controversy" exists. Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co., 68 F.3d 409, 414 (11th Cir. 1995). "The issue is 'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" Lubin v. Cincinnati Ins. Co., 2010 WL 5313754, at *4 (N.D. Ga. Dec. 17, 2010) (quoting Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941)). In light of the Court's findings above regarding Latex's breach of contract claims, Everest's Motion to Dismiss the claim for declaratory judgment must also be **DENIED.**

## Conclusion

Based on the foregoing, Everest's Motion to Dismiss [14] is **DENIED.**

**SO ORDERED**, this  8th  day of November, 2012.

_____
**RICHARD W. STORY**
United States District Judge

11